Jack R. CROTEAU

v.

BORDEN COMPANY
and
Eastman Kodak Corporation.

No. 35871.

United States District Court
E. D. Pennsyslvania.

Jan. 15, 1968.

---

2. The legal rate of interest in Delaware is 6%. 6 Del.C. § 2301(a).

Charles F. Love, Freedman, Borowsky & Lorry, Philadelphia, Pa., for plaintiff.

Israel Packel, Philadelphia, Pa., for Borden Co.

Victor L. Drexel, Philadelphia, Pa., for Eastman Kodak Corp.

## MEMORANDUM

FULLAM, District Judge.

On May 29, 1962, plaintiff suffered the loss of his left hand in an explosion in the research laboratory where he was employed, near Princeton, New Jersey. The laboratory was engaged in research on solid fuel propellants for rocket engines under a contract with the United States Government. Plaintiff was employed as a laboratory technician, assisting the professional chemist in charge of the particular project, and was carrying out a chemical experiment when the explosion occurred. He brought the present products liability action against the manufacturers of the ingredients which he was utilizing at the time of the explosion.

Plaintiff's evidence at trial was to the effect that, in accordance with directions received from his superior, he was engaged in producing a known chemical called vinylene diisocyanate, which required a two-step procedure. The first step of the procedure was to manufacture an "intermediate" substance known as fumaryl diazide. This involved dissolving sodium azide (manufactured by the defendant, Eastman Kodak) in water, at a low temperature (five to ten degrees Centigrade), then slowly adding, by means of a dropping funnel, a mixture of fumaryl chloride in acetone, still at a low temperature, and stirring the resulting solution for about one-half hour. The compound fumaryl diazide then formed, as a solid precipitate. The next step was to filter out the fumaryl diazide and remove the liquid by means of a water aspirator.

The plaintiff was engaged in the last of the above described steps when the explosion occurred. That is, he had already combined the sodium diazide with fumaryl chloride in acetone and had produced the compound fumaryl diazide. Fumaryl diazide in a dry state is highly explosive. It can be caused to explode by "the touch of a feather", or even by the friction generated when grains of the substance rub against each other, or against the sides of a container. It is not generally believed to be thus "sensitive" when moist. Plaintiff testified that he was aware of the necessity of keeping this compound moist at all times, and that it was covered by two or three inches of liquid at the time of the explosion; the defense theory was that plaintiff had allowed the compound to become dry. However, this dispute is of no present importance.

Plaintiff conceded at trial that he had no claim against the defendant, Borden

Company, and moved for a voluntary non-suit as to that defendant. Decision on this motion was reserved after opposition was expressed by the remaining defendant. There does not seem to be any present controversy as to the propriety of the judgment in favor of the Borden Company.

With respect to the defendant, Eastman Kodak Corporation, the sole claim asserted is that the defendant was negligent in failing to include adequate warnings on the label of the container of sodium azide.[1] For present purposes, it will be assumed that the defendant, Eastman Kodak Corporation, did in fact manufacture and sell the particular bottle of sodium azide which was used in the chemical procedure which resulted in the explosion described above. It is conceded that there is no suggestion that this product was in any way defective or impure. It is clear from plaintiff's own evidence that sodium azide as such is not explosive. However, it is the plaintiff's contention that the defendant was negligent in failing to include on the label a warning that, if mixed with a wide variety of other chemicals, the sodium azide would be likely to produce substances which would be explosive and which would require special handling.

At the close of all of the evidence, I granted the defendant's motion for a directed verdict. The present memorandum is being filed in order to spread upon the record the reasons for the action taken, it appearing that an appeal is in the offing.

■ It was and is my opinion that there are several fatal defects in plaintiff's case. In the first place, the chattel manufactured and sold by the defendant did not cause the explosion. The explosion was caused by another chattel, one manufactured by the research laboratory. Thus, the legal principles set forth in Restatement of Torts, 2d, §§ 388–400, relied upon by the plaintiff, do not even begin to operate. I know of no basis for imposing liability upon the manufac-

turer of a product for damage caused by someone else's product, at least in the absence of any suggestion that the damage resulted from a defect in the underlying ingredient. This is not a case of a component part after assembly, but of a complete change in the substance of the chattel.

■ In the second place, even if it were to be assumed that sodium azide should be regarded as dangerous because of the fact that it could be used to produce a product which is dangerous (and, even more difficult, that the defendant should have known that sodium azide was likely to be used to make such dangerous product) there could still be no liability on the part of the defendant unless it were established that the defendant "ha[d] no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." Restatement of Torts, 2d, § 388 (b). Under the circumstances of this case, it is too clear for argument that the defendant had every right to expect that its research-laboratory purchaser, and the chemists who would determine the uses to which the product would be put and direct the carrying out of these uses, would be thoroughly familiar with the properties of sodium azide and of the various potential dangers which might arise from its various possible uses.

■ Thus, there was in the present case not one iota of evidence to establish any negligence on the part of the defendant. No jury could be permitted to find that a manufacturer who sells a harmless chemical to a research laboratory engaged in secret research on rocket fuels owed any duty to warn of the possibility that the product supplied could be used to manufacture explosives. Martin v. Bengue, Inc., 25 N.J. 359, 136 A.2d 626 (1957), and Roberts v. United States, 316 F.2d 489 (3d Cir. 1963), cited by plaintiff, actually represent the converse of the present case.

But even if the foregoing conclusions were held to be incorrect, the evidence

1. The label merely warned that the product was poisonous.

does not disclose any causal connection between the alleged inadequacies of the label, and the happening of the accident. Plaintiff was working as a laboratory technician, assisting the professional chemist, Dr. Morton Meadow. It was Dr. Meadow who decided what should be done, and who directed each and every step performed by the plaintiff. It is undisputed that Dr. Meadow was thoroughly familiar with the properties of sodium azide, as well as the "intermediate" compound they were manufacturing. The presence or absence of a further warning on the label of the sodium azide bottle had nothing whatever to do with the manner in which the work was being done, or with the happening of the accident.

For all of these reasons, I am satisfied that the defendant was entitled to prevail as a matter of law, and that it was proper to direct a verdict under Rule 50. It is therefore unnecessary to consider the further problems of superseding cause and assumption of risk.