Opinion by
Packel, J.,
The plaintiff-appellant lost sight in one eye as a result of it being penetrated by a piece of steel, flying *186 off an allegedly defective chisel. He had admitted in the course of his testimony that the chisel, supplied him by an employee of one of the defendants, appeared to be rusty and ragged and that flakes came off as he was striking the chisel to put a hole in . a steel barrel. The barrel and the chisel had been supplied by an employee of the defendant-housing authority to enable the plaintiff’s employer, an additional defendant, to perform his contract with the housing authority for the removal of ashes from a former bank building.
The court below granted motions for compulsory nonsuits as to all the defendants upon the ground that the “plaintiff, knowing of a danger, disregarded the warnings of danger and assumed the risk of injury.” It need not be determined at this point whether this is a case of voluntary assumption of risk or one of contributory negligence because the plaintiff cannot recover if he fails to make out a case free of either defense, even though the burden of proof for either defense is upon the defendants. Giannone v. Reale, 333 Pa. 21, 3 A. 2d 331 (1939); Moseley v. Reading Co., 295 Pa. 342, 145 A. 293 (1929); cf. Restatement (Second) of Torts §402A (1965), under which only the defense of voluntary assumption of risk is available.
It is well-settled that a nonsuit should be entered only in a clear case. Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A. 2d 271 (1963). On appeal from a nonsuit the evidence must be viewed in the light most favorable to the plaintiff. Celender v. Allegheny Co. San. Auth., 208 Pa. Superior Ct. 390, 222 A. 2d 461 (1966). These principles are equally applicable to the issue of contributory negligence or voluntary assumption of risk on the part of a plaintiff and to the issue of negligence on the part of a defendant.
The court below did not find it necessary to consider the issue of negligence because it put the plain *187 tiff out of court on the basis of his fault. Since we are in disagreement with that conclusion, it is necessary to discuss both issues.
The issue as to negligence is predicated by the appellant upon the housing authority’s liability under §392 of the Restatement of Torts 2d which provides:
“One who supplies to another, directly or through a third person, a chattel to be used for the supplier’s business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
“(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
“(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.” The testimony by plaintiff’s employer that the housing authority agreed to supply the tools and equipment necessary for the ash removal was uncontradicted. Comment e of §392 specifically states that one who makes such an agreement is supplying the tools for a business purpose, and, therefore, is subject to the higher duty of care imposed upon such a supplier.[1]
When the janitor-employee of the housing authority gave the hammer and chisel to plaintiff’s co-worker to enable him to make a new barrel to replace the disabled one, he was clearly fulfilling a business purpose of his employer.[2] The janitor testified repeatedly that he ob *188 served the tools to be battered and rusty. Furthermore, he testified to the following conversation with a supervisor of the housing authority just prior to giving the tools to plaintiff’s co-worker: “A. He told me to give them what I had. Q. Give them what you had? A. Yes. Q. Did you tell him what you had? A. Yes. I told him I had a piece of hammer over there and a piece of chisel, but I said, ‘It ain’t no good.’ Q. What did he say? A. He told me to give them that. Q. What do you mean a piece of hammer? A. Well, we done quit using it, the thing wasn’t fit to use. Q. You don’t mean it was a part of a hammer? A. It was a whole hammer, but it was all round on the part that you hit with. You couldn’t drive a nail with it. You couldn’t even try to drive a nail with it. Q. What do you mean by a piece of chisel? A. Well, the chisel was all battered down on top.” The supervisor denied that such a conversation ever took place. In any event, these facts present a serious question of the janitor’s negligence in providing the obviously rusty hammer and chisel. In McGrath v. Atlantic Refining Co., 264 Pa. 341, 344,107 A. 741, 742 (1919), the Court concluded: “It is the continuous duty of the master to furnish his employees with reasonably safe tools, machinery and appliances, and, if performed, by a proper and diligent inspection to ascertain defects or their suitability .... Whether the employer neglected to select tools that could be used with reasonable safety under the circumstances was for the jury: Protosenia v. Brothers Valley Coal Co., 251 Pa. 175; Allison v. Fitz Water Wheel Co., 250 Pa. 111. . . .” The common law duty of a master to supply safe tools is equally applicable to the duty of third persons who supply tools for their own business benefit.
*189 The issue of plaintiff’s contributory negligence or voluntary assumption of risk in proceeding to use such tools is an interrelated one, but as this Court observed in Labick v. Ticker, 200 Pa. Superior Ct. Ill, 117, 186 A. 2d 874, 877-78 (1962) : “It is significant that there is nothing in the comments to §392 relating to contributory negligence by reason of the plaintiff’s failure to make an inspection in contrast to the duty of inspection placed upon the supplier by the black-letter of §392(b).” In that case the plaintiff, hired to wash the walls of the defendant’s garage showroom, fell from a “wobbly” ladder supplied by the defendant for that purpose. The defendant argued that the plaintiff’s use of the obviously defective ladder rendered him contributorily negligent as a matter of law. This Court rejected that contention and, noting the applicability of §392, held that the lower court had correctly submitted the issues of negligence and contributory negligence to the jury.
The point that the plaintiff saw that the chisel was rusty and that flakes came off as he struck the chisel does not as a matter of law show that he knew or should have known that a piece of steel would fly off the defective chisel. As already indicated, whether he should have known this and whether a defendant who supplied the tools should be deemed to know it are matters for the jury under appropriate instructions.[3]
*190 The order of the lower court granting a nonsuit as to defendant housing authority is vacated, and the record remanded for a new trial. The order of the lower court granting a nonsuit as to defendant redevelopment authority is affirmed.
Watkins and Jacobs, JJ., dissent from the vacation of the order.

 Cf. Bestatement (Second) of Torts §§388, 389 (1965), which set forth the duties of one who supplies a chattel to another for any purpose.

 Acts are within the scope of a servant’s employment where they are clearly incidental to the master’s business, and it is not *188 essential that the acts be specifically authorized by the master. Kelly v. Yount, 135 Pa. Superior Ct. 528, 7 A. 2d 582 (1939), aff'd per curiam,, 338 Pa. 190, 12 A. 2d 579 (1910).

 We do not disturb tbe grant of the nonsuit in favor of the appellee-redevelopment authority. Its contract with the housing authority for the care of the building reveals an intent to create an independent contractor relationship rather than one of master and servant. It gave the housing authority broad powers with regard to performance which included complete authority to hire, supervise and pay the personnel required to perform the services under the contract. In fact, there was a specific provision that “such personnel shall not be employees of or have any contractual relationship with the Redevelopment Authority.” The amount of control *190 over the manner and means of execution of the work which is vested in the contractor is one of the most important considerations in determining the relationship between the parties. Simonton v. Morton, 275 Pa. 662, 119 A. 732 (1923). In this case the redevelopment authority retained only such control as was necessary to guarantee ultimate performance in accordance with the agreement. Since the housing authority had the status of an independent contractor, the redevelopment authority could not be liable to appellant upon a respondeat superior theory, and that nonsuit must stand.