Isiah **LOCKETT**

v.

**GENERAL ELECTRIC COMPANY.**

**Civ. A. No. 70–1994.**

United States District Court,
E. D. Pennsylvania.

April 29, 1974.

Robert A. Ebenstein, Fine, Staud, & Grossman, Philadelphia, Pa., for plaintiff.

James F. McMullan, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This matter comes before the Court on the motions of the defendant, General Electric Company (G.E.), for judgment notwithstanding the verdict or in the alternative for a new trial. This was a bifurcated trial. The jury first returned a verdict for the plaintiff, Isiah Lockett, on liability and then awarded damages in the sum of $66,000.00.

On November 10, 1968, the plaintiff, Isiah Lockett (Lockett), a laborer employed by Sun Shipbuilding & Dry Dock Company (Sun Ship), was assigned to clean debris from the engine room of a vessel which was being constructed by Sun Ship and which was later designated the SS American Lynx. The area where Lockett was working was in the

lower engine room near the driveshaft. Mounted on the driveshaft was a split ring gear which drives two smaller pinion gears, one on either side of the driveshaft. The pinion gear on the right (starboard) side of the vessel drives an R.P.M. indicator, and the pinion gear on the left side (port-side) drives a "shaft stopped sensor." There was evidence that the split ring gear, the pinion gears, the R.P.M. indicator and the "shaft stopped sensor" were all supplied to Sun Ship by G.E. for assembly and installation in the vessel which Sun Ship was constructing.

During the morning hours of November 10, 1968, Lockett had been engaged in "blowing down" the debris with an air hose. This task was performed on the tank tops, which are below the decking or grating in the lower engine room. Some time after noon, approximately two hours prior to the accident, Lockett was told to stand on the deck in the lower engine room in the vicinity of the driveshaft and to pass buckets of debris from the tank tops to men working above him.

■ Some time between 3:30 P.M. and 3:45 P.M. Lockett stopped to clean his safety glasses. He was standing on the deck near the driveshaft and placed his left arm on one of the pinion gears. He was wearing "a pullover jacket with real wide, fluffy sleeves" tied at his wrists. (NT 2–19). Lockett's gang boss told him to tell the other laborers to complete the cleaning job before quitting time. When Lockett attempted to leave in order to carry out the gang boss's instructions, he became aware that his sleeve had become caught between one of the pinion gears and the split ring gear. At the time the driveshaft was "jacking", i. e., turning at a speed of one revolution every seven minutes for the purpose of cleaning the preservative from the main reduction gears. Lockett was unable to free himself from the gears, and before the driveshaft could be stopped he was pulled into the gears up to his shoulder, suffering injury to the muscles and nerves of the left upper arm and shoulder. Lockett testified that he was not aware, prior to the accident, that the driveshaft was turning. In normal operation the driveshaft turns at 120 revolutions per minute. Lockett stated that the accident occurred on the port side of the vessel, where the "shaft stopped sensor" was located. Another witness for the plaintiff, Bruce H. Johnson, testified that the driveshaft was turning in a clockwise direction when viewed from the stern of the vessel and that this meant that Lockett could not have been drawn into the gears on the port side but only on the starboard side of the vessel, where the R.P.M. indicator was located. Other evidence in the case demonstrated that Lockett was caught in the gears on the starboard side of the vessel and not in the gears on the port side. This contradiction is not fatal to Lockett's case. Guenther v. Armstrong Rubber Company, 406 F.2d 1315, 1317–1318 (3d Cir. 1969).

Although the final pretrial order stated that Lockett claimed liability against G.E. pursuant to sections 388, 389, 394 and 396 of the Restatement of Torts, Second (Restatement), at the trial Lockett's counsel limited his theory of liability specifically to sections 388 and 389 of the Restatement, and the case was submitted to the jury on these two theories.

G.E. contends that judgment notwithstanding the verdict should be granted because there was no competent evidence that G.E. furnished the gears involved in the accident. G.E. also contends that the evidence was insufficient to establish liability under section 388 or 389 of the Restatement. And finally, G.E. contends that Lockett was contributorily negligent as a matter of law.

■■ G.E. claims that there was no competent evidence that it supplied the gears involved in the accident. G.E. bases its contention that there was no competent evidence that it supplied the gears involved in the accident on its allegation that the Court erred in permitting Lockett to introduce into evidence

exhibits P–5, P–6 and P–11. The basis for G.E.'s opposition to exhibits P–5 and P–6, which identified G.E. as the party from whom Sun Ship intended to buy the R.P.M. indicator and the pinion gear for installation on the starboard side of the vessel is that these exhibits were never properly identified. G.E. also contends that no explanation was ever given as to when the handwritten notation contained on these exhibits which identified G.E. as the party from whom Sun Ship intended to buy the gears was made. These contentions are without merit. The parties stipulated that exhibits P–5 and P–6 were bills of materials prepared by Sun Ship in connection with the material used in the construction of the vessel. (N.T. 2–84). When called as a witness for Lockett, Bruce H. Johnson, the chief operating engineer for Sun Ship, testified that exhibits P–5 and P–6 were kept as part of the official business records of Sun Ship in the ordinary course of business (N.T. 2–86). He further testified that exhibits P–5 and P–6 specified the equipment which was shown in the photograph (P–4) of the starboard side of the driveshaft (N.T. 2–96).

Rule 43 of the Federal Rules of Civil Procedure provides, in pertinent part:

> All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs . . .

The Federal shopbook rule, 28 U.S.C. § 1732(a) provides, in pertinent part:

> In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transac-

tion, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

> All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

Since the parties stipulated that the exhibits were bills of material for equipment prepared by Sun Ship, and since it was testified that the said exhibits were made in the regular course of Sun Ship's business, the exhibits were admissible under the Federal shop book rule to show Sun Ship's intent to purchase the R.P.M. indicator and accompanying pinion gear from G.E. Even if exhibits P–5 and P–6 were inadmissible, however, any error was not prejudicial to G.E. because exhibit P–10, the purchase order from Sun Ship to G.E. for the R.P.M. indicator, and the accompanying pinion gear (N.T. 3–3, 3–14), was admitted into evidence with the express agreement of the defendant G.E. (N.T. 3–38). And as heretofore pointed out, the Chief Operating Engineer for Sun Ship identified the equipment specified in P–5 and P–6 as the same equipment installed on the ship.

■ G.E. also contends that the Court erred in admitting exhibit P–11 into evidence as a business record. Exhibit P–11 is a letter dated March 31, 1971 from the vice president of Sun Ship to its assistant treasurer in response to an inquiry concerning the accident. The letter indicates that the split ring gear which was mounted on the driveshaft, the "shaft stopped sensor" and accompanying pinion gear located on the port side of the vessel were also sup-

plied by G.E. Any error in the admission of exhibit P–11 was not prejudicial to G.E., however, since careful scrutiny of exhibit P–3, a photograph of the "shaft stopped sensor" and the accompanying pinion gear, reveals the inscription "GENERAL ELECTRIC." Accordingly, there was sufficient evidence in the record for the jury to find, without resort to prejudice or guess, that G.E. supplied the split ring gear, the two pinion gears, the R.P.M. indicator and the "shaft stopped sensor."

G.E. also contends that the evidence was insufficient to establish liability under either section 388 or section 389 of the Restatement, because these sections are not applicable to a supplier of component parts to be assembled by another into a finished product where the component parts are not in themselves dangerous or defective. G.E. further contends that the gears became dangerous, if at all, only when they were assembled, installed and operated by Sun Ship in an unsafe condition.

█ Section 388 of the Restatement reads as follows:

*Chattel Known to be Dangerous for Intended Use.* One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

This section has been adopted as the law of Pennsylvania, which is the law applicable to this case. *See, e. g.,* Pritchard v. Liggett & Myers Tobacco Company, 295 F.2d 292, 299 (3d Cir. 1961); Hopkins v. E. I. DuPont De Nemours, 199 F.2d 930, 932–933 (3d Cir. 1952); McMeekin v. Gimbel Bros., Inc., 223 F. Supp. 896, 898 (W.D.Pa.1963); Lambert v. Richards-Kelly Const. Company, 348 Pa. 407, 35 A.2d 76 (1944).

Section 388 requires the supplier of a chattel who knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied to exercise reasonable care to inform the users of the chattel of any latent dangers which arise when the chattel is put to the use for which it was supplied. Marker v. Universal Oil Products Company, 250 F.2d 603, 606 (10th Cir. 1957); McMeekin v. Gimbel Bros., *supra*; Cush v. Pittsburgh, Chartiers & Youghiogheny Ry. Company, 157 F Supp. 360, 362 (W.D.Pa.1957).

█ As used in section 388, the term "supplier" includes any person who for any purpose or in any manner gives possession of a chattel for use or permits another to use it while it is still in his possession or control. Restatement, section 388, comment a. It, therefore, applies to sellers, lessors, donors, bailors, or lenders, irrespective of the manufacturer of the chattel. Restatement, section 388, comment c. Ebbert v. Philadelphia Electric Company, 330 Pa. 257, 198 A. 323, 328 (1938). It has been applied to suppliers of latently dangerous component parts. Tomao v. A. P. DeSanno & Son, Inc., 209 F.2d 544 (3d Cir. 1954) (applying Massachusetts law).

█ Section 388 defines the person to whom the duty of care is owed as "those whom the supplier should expect to use the chattel with the consent [of the person to whom it is supplied] or to be endangered by its probable use." Users include not only the person to whom the chattel is turned over by the supplier but also all those who are members of a class whom the supplier should expect to

use it or occupy it or share in its use with the consent of such person, irrespective of whether the supplier has any particular person in mind. Restatement, section 388, comment a.

Unlike the strict liability imposed on a seller of a product by section 402A of the Restatement, and unlike the duty of care imposed on the manufacture of a product, a supplier of a chattel has no duty under section 388 to test or inspect or even make a cursory examination to ascertain the existence or non-existence of a dangerous condition. Section 388 requires only that the supplier warn of those dangers of which he is actually aware or has information which should make him aware that such a dangerous condition exists. Sears, Roebuck & Co. v. Marhenke, 121 F.2d 598, 600 (9th Cir. 1941); McMeekin v. Gimbel Bros., Inc., *supra*; Ebbert v. Philadelphia Electric Co., *supra*; Restatement, sections 12(1) and 388. In addition to the liability imposed under section 402A, there is, of course, also liability upon the manufacturer of a product for failure to exercise due care. The manufacturer is required to carefully design and fabricate his product and is required to make such inspections and tests during and after manufacture as are reasonably necessary to secure a safe product. Sieracki v. Seas Shipping Company, Inc., 149 F.2d 98, 99–100 (3d Cir. 1945), aff'd, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, reh. denied, 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946); Ebbert v. Philadelphia Electric Co., *supra*; Restatement, section 395, comments e and f. In contrast, the supplier of a chattel is not liable under section 388 when he exercises reasonable care to give those whom he may expect to use the chattel any information as to the dangers in the chattel of which he is actually aware or, from information which he possesses, should be aware. Tohan v. Joseph T. Ryerson and Son, Inc., 165 F.Supp. 638, 641 (E.D.Pa.1958), rev'd on other grounds, 265 F.2d 920 (3d Cir. 1959); Restatement, section 388, comment b and comment g. Except in exceptional circumstances, such as where the product is incapable of any safe use, or such as where the person to whom the chattel is supplied is obviously likely to misuse it, a supplier who has given such information to the persons through whom the chattel is supplied is entitled under section 388 to assume that it will not be used in an unsafe manner. Marker v. Universal Oil Products Company, *supra*, at 607 (1957); Brandon v. Yale & Towne Manufacturing Co., 220 F.Supp. 855 (E.D.Pa.1965); Restatement, section 388, comments g and n. A supplier of a chattel manufactured by another but marketed as his own product is held to the same standard of care as a manufacturer. Forry v. Gulf Oil Corp., 428 Pa. 334, 237 A.2d 593, 599 (1968); Restatement, section 400; Ebbert v. Philadelphia Electric Co., *supra*. The duty of a supplier of a chattel under section 388 should also be distinguished from the duty of a supplier who furnishes chattels for his own business purpose pursuant to section 392 of the Restatement. There a supplier has the duty to exercise reasonable care to make the chattel safe for the use for which he has supplied it. The duty under section 392 also requires the supplier to make a reasonable inspection of the chattel. Fullard v. Pittsburgh Urban Re-Development Authority, 222 Pa.Super. 184, 293 A.2d 118 (1972); Restatement, section 392 comment a.

The duty to warn under section 388 applies only to latent dangers. The supplier is not required to warn if he has reason to expect that the users of the chattel will discover its condition and realize the danger involved. Kerber v. American Machine & Foundry Co., 411 F.2d 419 (8th Cir. 1969); Burgess v. Montgomery Ward and Company, 264 F.2d 495 (10th Cir. 1959); Marker v. Universal Oil Products Company, *supra*; Jamieson v. Woodward & Lothrup, 101 U.S.App.D.C. 32, 247 F.2d 23 (1957); Tomao v. A. P. DeSanno & Son, Inc., *supra*; Yaun v. Allis-Chalmers Manufacturing Co., 253 Wis. 558, 34 N.W.2d 853 (1948). If a mere casual observation

will disclose the danger, the supplier has no duty to warn unless the circumstances under which the chattel is supplied are such as to make it unlikely that even so casual an inspection will be made. Restatement, section 388, comment k.

There is ordinarily no duty to give a warning to members of a profession against dangers generally known to members of that profession. Morrocco v. Northwest Engineering Co., 310 F.2d 809 (6th Cir. 1962); Sawyer v. Pine Oil Sales Co., 155 F.2d 855 (5th Cir. 1946); Littlehale v. E. I. du Pont de Nemours & Co., 268 F.Supp. 791, 798 (S.D.N.Y. 1966); Oettinger v. Norton Company, 160 F.Supp. 399 (E.D.Pa.1957), aff'd, 253 F.2d 712 (3d Cir. 1958).

Since a supplier of a component part is under no duty to warn the subsequent assembler of dangers which are generally known in the assembler's profession, the supplier has no duty to warn the assembler's employees. Marker v. Universal Oil Products Co., *supra*; *Littlehale, supra.*

Section 389 of the Restatement reads as follows:

*Chattel Unlikely to be Made Safe for Use.* One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

Under section 389 a supplier of a chattel who has informed the persons to whom he supplied the chattel of its dangerous condition may be held liable to persons ignorant of the dangerous condition of the chattel if he knows or has reason to know that the chattel is unlikely to be made reasonably safe before being put to its expected use. Cush v. Pittsburgh et al., *supra*, at 362. If the supplier of a chattel knows or has information from which a person of reasonable intelligence would infer that it is unlikely that the chattel will be made reasonably safe, the fact that he has informed the person through whom the chattel is supplied does not absolve him from liability. However, a supplier has no duty under section 389 to determine whether the chattel will be made reasonably safe—liability arises only when the supplier knows or has information from which he should know that there is a substantial probability that the chattel will not be made safe before it is used. Among the circumstances which render it unlikely that it will be made safe are knowledge of the fact that the chattel will be used so soon after it is turned over that it is substantially certain that no change will be made or that the person through whom it is supplied is financially incapable of making it safe, or is notoriously careless. Cush v. Pittsburgh et al., *supra*; Restatement, section 389, comment c. There are also some chattels which are so unsafe for the use for which they are likely to be put that the supplier cannot reasonably assume that the warning will be effective. Restatement, section 389, comment c. Section 389 imposes liability upon the supplier in those situations.

As indicated above and for the reasons hereinafter stated, sections 388 and 389 do not impose liability on the defendant, G.E., in this case. Lockett contends that G.E. was under a duty to furnish a guard for the gears which were supplied to Sun Ship. Section 388 and 389 do not impose a duty on the supplier of a product to supply a guard —these sections merely require a supplier to exercise reasonable care to inform the users of a chattel of the latent dangers involved in its use, and even then only where the supplier knows or

from information which the supplier possesses, he should know, of the danger. The duty does not arise where the supplier is not aware and has no information from which it should reasonably infer that the user will not realize its dangerous condition. Lockett has made no claim that the gears were defective in and of themselves. As his expert witness testified, gears which are assembled without a guard are dangerous (N. T. 3–30). G.E. would be merely under a duty to warn of any latent dangers which are likely to arise in the expected use of the gears. For example, if G.E. knew or had reason to know that the gears were not safe for operation at certain speeds, or, if, because of a latent condition of the gears, they were unsuitable for certain uses, G.E. would have a duty to warn of these latent dangers. *Tomao v. A. P. DeSanno & Son, Inc., supra*. As a supplier under section 388, G.E. was under no duty to make inspections and tests and was under no duty to find out whether Sun Ship would install the guard prior to operation of the gears. Compare *Smith v. Hobart Manufacturing Co.*, 302 F.2d 570 (3d Cir. 1962). If any party would have had a duty to warn of the danger in the operation of the assembled gears, it would have been Sun Ship who assembled the component parts supplied by G.E. into the vessel. The gears only became dangerous, if at all, when operated by Sun Ship without a guard. *See Croteau v. Borden Co.*, 277 F.Supp. 945 (E.D.Pa. 1968), aff'd 395 F.2d 771 (3d Cir.).

In order for the plaintiff to recover in an action predicated on section 388, he must prove, *inter alia*, (1) that the defendant knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; (2) that the defendant has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; (3) that the plaintiff is a person whom the defendant should expect to use the chattel with the consent of the other or to be endangered by its probable use.

In this case the plaintiff was required to establish that the defendant, G.E., knew or had reason to know that the gears were dangerous or were likely to be dangerous for the use for which they were supplied. Although G.E. undoubtedly knew that the split ring gear and the pinion gears would be assembled and installed on the driveshaft in the engine room of the vessel, there is no evidence that G.E. knew or had reason to know that the gears would be operated without a guard by the employees of Sun Ship or that the gears would be operated without a guard at such a slow speed that their movement would not be obvious to someone in the vicinity. As previously stated, G.E. did not have a duty to test or supervise the installation of the gears as a mere supplier. While there was evidence that G. E. maintained an employee permanently on the premises of Sun Ship, the employee was not called to testify and there was no evidence that G.E. knew of facts from which it should have inferred that the unguarded gears would be operated during the construction of the ship. Any conclusion as to the knowledge of G.E.'s employee by virtue of his mere presence at the shipyard would be pure conjecture. Furthermore, there was evidence in the record in Lockett's case that Sun Ship's drawings indicated that Sun Ship would supply and install the guard. The gears were supplied by G.E. on the basis of specifications supplied by Sun Ship. It was clear that Sun Ship would assemble and install the gears on the driveshaft. Lockett did not contend, and there was no evidence, that the gears were inherently dangerous, defective or improperly designed. Lockett based his case on the sole contention that the operation of gears without a guard was dangerous.

In *McMeekin v. Gimbel Brothers, Inc., supra*, a five-year old child was struck in the eye by an unidentified object which his father, as his natural guardian, contended was thrown from the grass chute of the lawn mower which the father was operating in an-

other part of the yard. There, as here, the theory of liability was based upon the duty imposed on the supplier of the lawn mower under section 388. The plaintiff contended that the lawn mower was dangerous since the supplier knew or should have known that it had a capability of expelling objects over 150 feet at a lethal speed. Judge Marsh of the United States District Court for the Western District of Pennsylvania granted a directed verdict at the close of the plaintiff's evidence. In denying the plaintiff's post-trial motions, he concluded, *inter alia*, that the plaintiff failed to produce sufficient evidence to enable a jury to find liability under section 388 and stated, at 898:

> In our opinion plaintiffs failed to bring their case within the purview of § 388, for it was not shown that the defendant knew, or from facts known to it should have realized, that the mower was or was likely to be dangerous for the use for which it was supplied. The accident itself is the only fact in the case which would tend to prove that the mower was a dangerous instrument . . . . Plaintiffs failed to meet their burden that the retailer knew or should have realized that a dangerous condition existed. [Citations omitted.]
>
> Where there is no proof of a dangerous instrumentality, and no proof of a defect or improper design making an otherwise harmless instrument dangerous, of which defendant retailer knew or should have known, it follows that the retailer has no duty to warn of product-connected dangers. [Citations omitted.]

In this case, G.E. only supplied the gears assembled and installed by Sun Ship. Lockett failed to meet his burden that G.E. knew or had reason to know that the gears would be dangerous. *See also* Smith v. Hobart Manufacturing Company, 302 F.2d 570 (3d Cir. 1962); Thomas v. Ribble, 404 Pa. 296, 172 A.2d 280 (1961). This Court has not been presented with any decision which would require the supplier of a component part which contains no latent danger to warn the subsequent assembler and his employees of any danger which might arise after the components are assembled. *See* Croteau v. Borden Co., 277 F.Supp. 945, 947 (E.D.Pa.1968), aff'd, 395 F.2d 771 (3d Cir.).

■ There is an even more compelling reason why the verdict must be set aside. Lockett failed to produce evidence from which the jury could conclude, without resort to prejudice or guess, that G.E. had reason to believe that those persons for whose use the gears were supplied would not realize their dangerous condition when operated without a guard. Comment k to section 388 of the Restatement provides:

> k. ¸When warning of defects unnecessary. One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character insofar as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made. However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risk of which he himself knows and which he has no reason to suppose that they will realize.

A supplier has a duty to exercise reasonable care to inform a user of any danger which might arise from the use of a product, but only in the situation where the supplier has no reason to expect that those to whom the product is supplied will discover its condition and realize the danger. In this case, G. E. was a supplier of the gears to Sun Ship, who assembled and installed them into a completed vessel. Even assuming that Lockett, as an employee of Sun Ship, was a person whom G.E. should expect to "use" the product, or be endangered by its probable use, G.E., as a mere supplier of the component parts, had a right to assume that Sun Ship and its employees would operate the gears under safe conditions. The absence of a guard on moving gears is not a latent defect, and a duty to warn of dangers under section 388 arises only if the danger is latent. A casual glance at the gears would have disclosed that they were unguarded, and it cannot be said that the circumstances were such that such observation would not be made.

In Bartkewich v. Billinger, 432 Pa. 351, 247 A.2d 603 (1968), the Supreme Court of Pennsylvania, in a 402A case where contributory negligence is not a defense, held that a manufacturer had no duty to install a guard where the danger was obvious. The Supreme Court stated, at 247 A.2d 606:

> Here too [plaintiff] knew that there was no guard rail, and certainly should have appreciated the danger of placing his hand in an operating . . . machine. We do not believe that [defendant] was required to install a guard rail which would prevent a person from voluntarily putting himself at so obvious a risk.

The danger in the operation of unguarded gears should have been obvious to Sun Ship and Lockett, and G.E. had no duty to warn. *See also* Jamieson v. Woodward & Lothrup, *supra;* Burgess v. Montgomery Ward, *supra;* Yaun v. Allis-Chalmers, *supra.*

Furthermore, even assuming for the sake of argument that the condition was not readily observable to a person without special experience, it certainly can be assumed that Sun Ship has special experience in the assembly and construction of vessels, and G.E. had reason to believe that those in Sun Ship's employ, working in the vicinity of the gears, would be able to perceive the danger. As previously stated, there is ordinarily no duty to give a warning to members of a profession against dangers generally known to that profession. Marker v. Universal Oil Products Co., *supra;* Littlehale v. E. I. du Pont de Nemours & Co., *supra;* Oettinger v. Norton Company, *supra.* As noted by the Tenth Circuit in *Marker,* where a dangerous condition is equally within the technical knowledge of the supplier and the employer, there is no duty on the part of the supplier to warn the employer of the danger. In this case, Sun Ship as the final assembler of the gears had even more reason than G.E. to know of the dangers presented by the operation of the gears. G.E. had a legitimate right to rely on Sun Ship to protect its own employees from harm and had no duty to anticipate that Sun Ship would operate the gears so as to present a dangerous condition. Furthermore, the cause of the accident in this case may well have been the failure of Sun Ship to warn Lockett that the driveshaft was being turned over at a slow speed, i. e., one revolution every seven minutes. Accordingly, the Court concludes that the evidence, when viewed in a light most favorable to Lockett, was insufficient to permit the jury to find that G.E. was liable under section 388 of the Restatement.

G.E. also contends that there was insufficient evidence to predicate liability under section 389 of the Restatement. As heretofore pointed out, this section provides for liability to persons ignorant of the dangerous condition of the product even after the supplier has warned the persons through whom

the chattel is supplied of the information necessary to enable it to be used safely, if the supplier knows or has reason to know that the chattel is unlikely to be made reasonably safe by the persons through whom it is supplied before being put to an expected use. There is not sufficient evidence in this record to permit a jury to find, without resort to prejudice or guess, that G.E. knew or had reason to know that it was unlikely that Sun Ship would guard the gears before they were operated. As previously noted, Sun Ship's drawings included provision for a guard which Sun Ship furnished and apparently installed at a later stage of the construction of the vessel. There was no evidence, and it cannot be seriously argued, that Sun Ship was not capable of installing a guard or warning its own employees.

Accordingly, the Court concludes that there was insufficient evidence to predicate liability under section 389 of the Restatement.

█ Finally, G.E. contends that Lockett was contributorily negligent as a matter of law. Under Pennsylvania law, contributory negligence, which is a defense under sections 388 and 389 of the Restatement of Torts, Second, is negligence of the plaintiff, however slight, which contributes as a proximate cause of the accident. McCay v. Philadelphia Electric Co., 447 Pa. 490, 291 A. 2d 759 (1972); Hunger v. LaBarre, 224 Pa.Super. 507, 307 A.2d 407 (1973). By Lockett's own testimony, he had been employed as a laborer for Sun Ship for about three or four years prior to the accident. Lockett testified that on the day of the accident he was wearing a "pullover jacket" with real wide, fluffy sleeves. There was a whole lot of room, you know, in the sleeve." (N.T. 2–19). He testified that the sleeves were tied around his wrist. He further testified that he stopped and leaned on the gear and remained there for maybe a couple of minutes before he realized that his sleeve was caught in the gears. (N.T. 2–20). Two other expert witnesses who testified in Lockett's case stated that loose clothing should not be worn in the vicinity of moving gears. (N.T. 2–133, 3–33). One of these witnesses also testified that it was a poor safety practice to rest one's arm on an unguarded gear whether it was moving or not (N.T. 3–33).

Although the jury did not conclude that Lockett was contributorily negligent, the evidence in this record indicates that he may have been contributorily negligent as a matter of law. In view of our determination to grant G.E.'s motion for judgment notwithstanding the verdict, we will not decide this issue.

Accordingly, the Court concludes that judgment notwithstanding the verdict must be entered because there is insufficient evidence in the record to establish liability under section 388 or 389 of the Restatement.

█ Rule 50 of the Federal Rules of Civil Procedure requires the Court to conditionally rule on G.E.'s motion for a new trial. The Court finds no error which would require granting G.E.'s motion for a new trial. The Court finds that the verdict is not excessive and also finds that the other errors alleged by G. E. as a basis for its motion for a new trial (which are discussed above in connection with the NOV motion) are without merit.