972 F.2d 507
 36 Fed. R. Evid. Serv. 435, Prod.Liab.Rep. (CCH) P 13,262
Edward T. BLANCHA, Executor of the Estate of Frank D.
Thomas, Deceased, and Sonya Thomas in Her Own Right
v.
RAYMARK INDUSTRIES; Eagle Picher Industries, Inc.;
Garlock, Inc.; Celotex; GAF Owens Illinois Keene
Corporation,
Keene Corporation, Appellant.
 No. 91-1928.
 United States Court of Appeals, Third Circuit.
 Argued May 20, 1992.
Decided Aug. 7, 1992.
Rehearing and Rehearing In Banc
Denied Sept. 4, 1992.
 
 Martin Greitzer (argued), Lee B. Balefsky, Amanda Cooperman, Jonathan W. Miller, Greitzer and Locks, Philadelphia, Pa., for appellees.
 Bruce H. Bikin (argued), Alycia S. Horn, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellants.
 Before: HUTCHINSON, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 This personal injury action arose out of the mesothelioma-related death of Frank Thomas. Following a jury trial, a verdict was rendered in favor of defendant Keene Corporation. The plaintiffs moved for a new trial and the district court granted the plaintiffs' motion. The plaintiff prevailed at the second trial. Keene appeals from the order of the district court which granted the new trial. We must determine whether the reasons advanced by the district court warranted the grant of a new trial. For the reasons that follow, we conclude that the order granting a second trial was in error.
 
 I.
 
 2
 Thomas served in the United States Navy from April 5, 1951 to March 24, 1955. For approximately nine months of that time, Thomas was exposed to various kinds of asbestos and asbestos products while working as a machinist aboard the USS Gainard and the USS Timmerman at the Philadelphia Naval Shipyard. In the summer of 1987, more than twenty years later, Thomas was diagnosed as having an asbestos-related condition. At that time, he was fifty-five years old. Following his diagnosis, Thomas filed suit in the district court against several manufacturers of asbestos. He died on August 10, 1988.[1]
 
 
 3
 All of the defendants, with the exception of Keene and Owens-Illinois, settled or were dismissed prior to trial. After the first day of trial, plaintiffs settled their case against Owens-Illinois and the trial proceeded against Keene Corporation as the sole remaining defendant.[2]
 
 
 4
 At trial, it was undisputed that Thomas' death was caused by mesothelioma. Mesothelioma is a cancerous condition involving the pleura--the lining of the lung--most frequently caused by exposure to some types of asbestos. The evidence at trial also established that he had been exposed to a variety of products containing asbestos, some, but not all, of which were manufactured and distributed by Keene.
 
 
 5
 Testimony established that there are three types of asbestos: crocidolite, amosite and chrysotile. Plaintiffs presented the testimony of two experts, Dr. DuPont and Dr. Harrer, on the issue of causation. Both testified that Mr. Thomas' mesothelioma was caused by exposure to asbestos and that all exposures to all types of asbestos were substantial contributing factors to the development of his mesothelioma.
 
 
 6
 In response to the testimony of Drs. DuPont and Harrer, Keene presented the testimony of Dr. Gee. Dr. Gee testified that chrysotile asbestos, unlike other types of asbestos, does not cause mesothelioma. Thomas testified, via videotape, that he had been exposed to asbestos products manufactured by Keene. However, no testimony was offered by either party as to what type of asbestos was in any of the Keene products to which Thomas was exposed. The plaintiffs objected to the introduction of Dr. Gee's testimony on the ground that Keene had not presented any evidence that its product contained chrysotile and thus was irrelevant. The court overruled plaintiffs' objection. Following Dr. Gee's testimony, the plaintiffs moved to strike, again on the grounds of irrelevance. The court denied the motion to strike. Dr. Gee was Keene's only witness at trial.
 
 
 7
 The jury, in answer to special interrogatories, determined that the asbestos products supplied by Keene were defective because they lacked adequate and proper warnings of the danger in the use of the product. However, the jury concluded that the products were not a substantial contributing factor in bringing about the illness and subsequent death of Thomas. The jury, therefore, found in favor of Keene.
 
 
 8
 Following the jury's verdict, plaintiffs moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. On August 1, 1991, the district court denied the motion for judgment notwithstanding the verdict but granted the motion for a new trial. The district court, in the opinion accompanying its order, held that it had erred in admitting Dr. Gee's testimony because, while the substance of his testimony was that chrysotile asbestos does not cause mesothelioma, Keene had introduced no evidence that its products contained chrysotile asbestos. Because Keene did not produce such evidence, the court concluded that Dr. Gee's testimony was irrelevant and that "it [was] very likely that the admission of the irrelevant testimony of Keene's expert misled the jury into believing that Keene's product contained chrysotile asbestos and could not therefore have caused Mr. Thomas' mesothelioma." App. at 37.
 
 
 9
 Keene then moved for reconsideration of the court's order on the ground that in granting a new trial, the district court had impermissibly shifted the burden of proof to Keene. That motion was denied on August 14, 1991. The reasons set forth by the court in its opinion accompanying the order denying the motion for reconsideration differed somewhat from those set forth in its August 1 opinion. The court noted that the basis for its previous decision was its conclusion that "the admission of any evidence that Keene's product contained chrysotile asbestos was substantially erroneous, in that the jury was very likely misled into believing that Keene's products contained chrysotile and could not therefore have caused Mr. Thomas' mesothelioma." App. at 40. The court stated:
 
 
 10
 Keene is correct in its assertion that Dr. Gee's testimony was relevant and admissible to the extent that it served to rebut the testimony of plaintiffs' experts that all exposure to asbestos was a substantial contributing factor to Mr. Thomas' development of mesothelioma.... However, Dr. Gee's testimony was not so limited and the clear inference underlying Keene's case was that its products could not have caused Mr. Thomas' mesothelioma because they contained chrysotile asbestos.
 
 
 11
 App. at 40-41. Thus, the court apparently determined that its previous conclusion, that Dr. Gee's testimony should have been excluded because it was irrelevant, was in error.
 
 
 12
 In reaching its conclusion, the court relied upon a number of events at the first trial. The court noted that during opening arguments, counsel for Owens-Illinois, Keene's codefendant, had told the jury that plaintiffs had sued the wrong defendant because Owens-Illinois' products contained chrysotile and chrysotile does not cause mesothelioma. Moreover, the court stated that counsel for Keene had "suggested [in her opening] that the arguments advanced by Owens-Illinois also applied with respect to Keene products."[3] App. at 41. In addition, Dr. Gee had testified about the absence of a causal link between mesothelioma and chrysotile asbestos, and had testified that chrysotile asbestos was used on United States Navy ships. Based upon this evidence, the district court stated, the jury "could not properly conclude that Keene's products contained chrysotile." App. at 42.
 
 
 13
 The court reasoned, and Keene conceded, that the jury's verdict was most likely based on its conclusion that chrysotile asbestos does not cause mesothelioma. Because the jury must have so concluded, the district court opined that the "verdict would thus also necessarily be based on a conclusion that Keene's products contained chrysotile asbestos [and] [t]he jury could not properly make such a conclusion [ ] because there was absolutely no evidence concerning the contents of Keene's products." App. at 42 (emphasis added). The court rejected Keene's contention that the court had implicitly shifted the burden of proof to Keene stating:
 
 
 14
 There is no doubt that plaintiffs bore the burden of proving all the elements of their case, and that Keene was not required to produce any evidence regarding the contents of its products. However, a jury cannot base a verdict on a conclusion for which there is no evidentiary basis. This does not shift the burden of proof, nor does it substitute the judgment of the court for that of the jury. I did not grant a new trial because I would have come to a different conclusion from that of the jury, but because I believe that the jury was misled, and probably reached a conclusion for which there was no evidentiary support.
 
 
 15
 Id.
 
 
 16
 Finally, in denying the motion of Keene for reconsideration, the court noted that although the plaintiffs had taken no exception to the instructions given to the jury, "it was incumbent upon [the court] to instruct the jury that there was no evidence as to the type of asbestos produced by Baldwin-Hill." App. at 43. The failure to give such a charge, according to the district court, warranted the grant of a new trial.
 
 
 17
 Prior to the retrial, the parties stipulated that the case be retried to the court without a jury. At the retrial, the parties offered into evidence the entire record of the original trial. Based on the record of the original proceeding, the district court entered judgment in favor of the executor of the Thomas estate and Mrs. Thomas, and against Keene. This appeal followed.
 
 
 18
 We have jurisdiction over this appeal under 28 U.S.C. § 1291 (1988). While an order granting a new trial is purely interlocutory and thus is not an appealable final order within the meaning of section 1291, such an order is reviewable after a final order is entered following retrial. 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2818 (1973). If we agree that the motion for a new trial should not have been granted, we will reverse the order granting a new trial and reinstate the verdict reached at the first trial. Id.; see also Fassbinder v. Pennsylvania R.R. Co., 322 F.2d 859, 864-65 (3d Cir.1963) (in banc).
 
 II.
 
 19
 The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). When a court's ruling on a motion for a new trial is contested on appeal, we review the district court's decision for abuse of discretion, but if the court's ruling was based on the application of a legal precept our review is plenary. Waldorf v. Shuta, 896 F.2d 723, 737 (3d Cir.1990); Honeywell v. American Standards Testing Bureau, 851 F.2d 652, 655 (3d Cir.1988), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989); Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir.1986). Although subject to some dispute, see In re Japanese Electronic Products, 723 F.2d 238, 269 (3d Cir.1983), reversed on other grounds sub nom., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), rulings by a district court regarding the relevancy of evidence would appear to be discretionary and reviewable only for abuse of discretion. Pfeiffer v. School Bd. for Marion Center Area, 917 F.2d 779, 781 (3d Cir.1990); Gagliardi v. Flint, 564 F.2d 112, 116 (3d Cir.1977), cert. denied, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). Where a new trial has been granted on the basis that the jury's verdict was tainted by confusion or that a new trial is required to prevent injustice, we review for abuse of discretion. United States v. Baytank (Houston), Inc., 934 F.2d 599, 618 (5th Cir.1991); American Bearing Co., Inc. v. Litton Industries, Inc., 729 F.2d 943, 948 (3rd Cir.), cert. denied, 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984). Determinations as to whether a party's defense is an affirmative defense which the party raising it bears the burden of proving, are legal determinations over which this court has plenary review. Waldorf, 896 F.2d at 737.
 
 
 20
 The basis of the district court's decision to grant a new trial in this case is somewhat unclear. Our reading of the district court's opinion convinces us, however, that its decision did not rest on a conclusion that the testimony of Dr. Gee should have been excluded as irrelevant. Instead, the court apparently believed that Dr. Gee's testimony, while relevant, so confused the jury as to result in some sort of miscarriage of justice. We conclude that the order of the district court granting a new trial must be reversed because its rulings regarding relevancy and jury confusion are based on the same flawed legal premise: that Keene, in order to attack plaintiffs' theory on proximate cause, was required to first produce evidence that its product was chrysotile. The court apparently determined that the jury could not reach the verdict it did without determining that Keene's products were chrysotile. This was error. As will be discussed, Dr. Gee's testimony was relevant and Keene did not suggest that its product was chrysotile. Because the district court's conclusions to the contrary were based on the erroneous notion that Keene was obligated to present affirmative evidence regarding the content of its products, the order granting a new trial must be reversed.
 
 III.
 
 21
 There is no body of federal law generally applicable to the formidable number of asbestos cases which have been filed in this jurisdiction and across the nation. Instead, these claims are governed by substantive state tort law and are litigated under state law theories of negligence, warranty and strict liability. Robertson v. Allied Signal, Inc., 914 F.2d 360, 366 (3d Cir.1990).
 
 
 22
 "Under Pennsylvania law, the plaintiff in a products liability action bears the burden of demonstrating that a specific defendant is responsible for the harm alleged." Id. This requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged. Id. at 367.
 
 
 23
 In the present case, plaintiffs' theory at trial was that Thomas had been exposed to the asbestos products of a variety of manufacturers and that all asbestos products caused mesothelioma, the particular condition with which Thomas had been stricken. This theory, if believed, would in essence relieve the plaintiffs of the need to show that Mr. Thomas' condition was caused by one particular asbestos product as opposed to another. As plaintiffs' counsel stated in her opening, their theory was "really very simple." App. at 137. If the plaintiffs were able to show that Thomas had been exposed to Keene's products, they did not, according to plaintiffs, need to prove that Keene's products, as opposed to those of some other manufacturer, caused Thomas' condition.
 
 
 24
 From the very beginning of the trial, however, the defense made it clear that the case was not, in its view, quite that simple. Counsel for Owens-Illinois and counsel for Keene made separate opening statements. In his opening, counsel for Owens-Illinois explained that the plaintiffs had "sued the wrong company," app. at 141, because Owens-Illinois' product during the period in question contained chrysotile asbestos which, unlike other types of asbestos, does not cause mesothelioma. Owens-Illinois directly challenged the plaintiffs' ability to prove that its products were a substantial contributing factor in Thomas' condition and subsequent death. Presumably its trial strategy was to prove that the products manufactured by Owens-Illinois contained chrysotile.
 
 
 25
 Counsel for Keene took a somewhat different approach. Unlike Owens-Illinois, Keene did not assert in its opening statement that its product was chrysotile. Moreover, contrary to the district court's statement, Keene at no time "suggested that the arguments advanced by Owens-Illinois' counsel also applied with respect to Keene products." App. at 41. Keene did, however, join in the theory that there are different types of asbestos products, only some of which cause mesothelioma. Keene asserted that while the evidence would show that Thomas was exposed to a Keene product, "the evidence will also show that that product was not a substantial factor in causing Mr. Thomas' death." App. at 155. Keene's theory then, was that plaintiffs would be unable to prove proximate cause by a preponderance of the evidence.
 
 
 26
 During their case, plaintiffs presented evidence that Thomas was exposed to products manufactured by Baldwin-Hill, Keene's predecessor. Plaintiffs also presented two experts, Drs. Harrer and DuPont, both of whom testified that all types of asbestos are substantial contributing factors to mesothelioma. Thus plaintiffs' theory was simply that, regardless of the number of or types of asbestos products to which Thomas had been exposed, Keene's products, like those of other manufacturers of asbestos products, were a substantial contributing factor to Thomas' illness and death.
 
 
 27
 Keene put on only one witness--Dr. Gee. The substance of Dr. Gee's testimony was that chrysotile asbestos does not cause mesothelioma. Thus Dr. Gee's testimony directly challenged the backbone of the testimony presented by plaintiffs' experts--that all types of asbestos cause mesothelioma. Keene sought to introduce Dr. Gee's testimony on the grounds that it was relevant to whether plaintiffs could prove that Keene's asbestos products were a substantial contributing factor to Thomas' illness and death. In other words, Dr. Gee's testimony was relevant to the issue of proximate cause, which plaintiffs had to prove in order to recover.
 
 
 28
 Plaintiffs objected to the introduction of Dr. Gee's testimony. Their position was that because Keene had produced no evidence that its product actually contained chrysotile asbestos, Dr. Gee should not be allowed to testify concerning his opinion that chrysotile does not cause mesothelioma. The district court properly overruled this objection and admitted Dr. Gee's testimony on the "very limited" issue of whether all asbestos products cause mesothelioma. The district court, in responding to plaintiffs' objection, correctly noted:
 
 
 29
 [I]t's for the jury. Before the plaintiff can recover, the jury has to be convinced by a preponderance of the evidence that there was--that the asbestos products that were made by the defendant, manufactured by the defendant or distributed by the defendant did cause the cancer or the disease, whatever it may have been.
 
 
 30
 App. at 350.
 
 
 31
 The court's statement implicitly referred to where the burden of proof should lie in a case such as this. The plaintiffs bore the burden of proving, by a preponderance of the evidence, that Keene's products were a substantial contributing factor in the cause of Thomas' illness and death. To establish proximate cause, plaintiffs relied on their experts' testimony that all asbestos causes mesothelioma. Dr. Gee's testimony, which attacked the theory put forth by plaintiffs' experts, was clearly relevant and permissible to rebut plaintiffs' theory of causation.
 
 
 32
 Under Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As noted in the Advisory Committee's Note to Rule 401, "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Because the rule makes evidence relevant "if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact." 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5166, at 74 n. 47 (1978) (emphasis added). Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant. Id. § 5166, at 74.
 
 
 33
 On this appeal, plaintiffs contend that Dr. Gee's testimony could not be relevant unless Keene presented evidence as to the actual content of its products. According to plaintiffs, the presentation of evidence that Keene's products contained chrysotile is "the one essential prerequisite to a chrysotile defense." Brief for Appellees at 7 (emphasis in original). The plaintiffs have cited no case in support of the assertion that there even exists something called the "chrysotile defense" nor have we uncovered any such legal principle.
 
 
 34
 To the contrary, Keene was under no obligation to present evidence as to what its product was or was not. The absence or presence of chrysotile in asbestos products is not an affirmative defense which would require the presentation of any evidence by Keene. Cf. Sprague v. Casey, 520 Pa. 38, 550 A.2d 184, 188 (1988) (laches is an affirmative defense); Beechwood Commons Condominium Ass'n v. Beechwood Commons Assoc., 397 Pa.Super. 217, 580 A.2d 1, 5 (1990) (party asserting defense of accord and satisfaction has burden of proving defense); Hill v. Reynolds, 384 Pa.Super. 34, 557 A.2d 759, 762 (1989) (defense of contributory negligence must be proved by preponderance of the evidence by party asserting it); Fullard v. Urban Redevelopment Auth. of Pittsburgh, 222 Pa.Super. 184, 293 A.2d 118, 119 (1972) (defendant must prove defense of assumption of the risk); Fedun v. Mike's Cafe, Inc., 204 Pa.Super. 356, 204 A.2d 776, 780 (1964) (party raising defense of release or recision bears burden of proving it), aff'd, 419 Pa. 607, 213 A.2d 638 (1965). Instead, once plaintiffs' experts testified to their opinion that all types of asbestos cause mesothelioma, Keene was free to challenge that theory, either through cross-examination or in its own case.[4] Therefore we cannot agree with the proposition that the relevance of Dr. Gee's testimony somehow depends on Keene's ability to prove the content of its product. If we were to accept the plaintiffs' notion that testimony such as Dr. Gee's could only be admitted if Keene first proved the contents of its product, we would be impermissibly shifting the burden of proving proximate cause to Keene. This is so because the natural extension of plaintiffs' argument as to the admission of such testimony is that Keene must concede the element of proximate cause unless it is prepared to affirmatively prove its products were not the proximate cause of the victim's illness. This cannot be.
 
 
 35
 Plaintiffs' failure to present further proof of fiber content, following the testimony of Dr. Gee as to the possible causes of mesothelioma, left the jury to decide whether plaintiffs had shown, by a preponderance of the evidence, that Keene's products were the proximate cause of Thomas' injury. Based on the conflicting testimony before it, the jury was free to believe either plaintiffs' experts, who testified that all asbestos products cause mesothelioma, or Keene's expert, who testified that at least one fiber, chrysotile, does not. Indeed, we note that even if Keene had presented no evidence in its defense, as it was free to do, the jury could still doubt plaintiffs' version of events and hold in favor of Keene. See McCormick on Evidence § 339 at 438-39 (4th ed. 1992) ("experience may tell [the jury] that although plaintiff has introduced evidence and the defendant has offered nothing in opposition, it is still unlikely that the events occurred as contended by the plaintiff").
 
 
 36
 The jury's answers to the interrogatories indicate nothing more than that it did not believe the plaintiffs had sustained their burden of proving proximate cause. The district court correctly recognized that "the jury could have properly chosen to discredit the opinion of the plaintiffs' experts and found that plaintiffs had not adequately established that it was Keene's products that caused Mr. Thomas' illness and death." App. at 41. However, the court went one step further, concluding that the "inference underlying Keene's case was that its products could not have caused Mr. Thomas' mesothelioma because they contained chrysotile asbestos," id., and therefore a new trial was appropriate because of that misleading inference. There was no basis for the district court's finding that the jury was misled.
 
 IV.
 
 37
 The district court, in its ruling on Keene's motion for reconsideration, retreated from its original determination that Dr. Gee's testimony was irrelevant, concluding that his testimony was relevant to the issue of whether exposure to all asbestos was a substantial contributing factor in Thomas' mesothelioma. However, the court determined that while the jury's verdict could be viewed as its determination that plaintiffs had failed to prove proximate cause, "the jury could not properly conclude that Keene's products contained chrysotile asbestos." App. at 42. Therefore the court held that the jury was misled into reaching a conclusion for which there was no evidentiary support--namely, that Keene's product was chrysotile and did not cause Thomas' mesothelioma.
 
 
 38
 The district court assumed too much. The mere fact that the jury determined that plaintiffs had failed to prove proximate cause does not mean they believed Keene's product was chrysotile. The jury did not need to determine what Keene's product was in order to determine that plaintiffs had failed to prove their case.
 
 
 39
 The legal basis for the district court's ruling is not entirely clear. Apparently the court granted the new trial motion because it believed that the testimony of Dr. Gee, while relevant, should have been excluded under Fed.R.Evid. 403 and thus granted the new trial based on its belief that evidence was erroneously admitted. However, the court may also have simply been exercising its broad discretion, under Fed.R.Civ.P. 59, to set aside a jury's verdict where it appears to be based the result of jury confusion. In either case, we conclude the district court erred.
 
 
 40
 Fed.R.Evid. 403 states that evidence, even if relevant, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Thus evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues. United States v. Dennis, 625 F.2d 782, 797 (8th Cir.1980). While it is difficult to set forth any exclusive list of factors favoring Rule 403 exclusion, certain types of evidence are routinely excluded under the rule. Evidence relating to previous litigation involving the parties, evidence which has an aura of scientific infallibility but is likely to be used for purposes other than that for which it was introduced, and evidence of statistical probabilities are all likely subjects of exclusion. See Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence p 403 (1988). Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative. United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir.1990). The balance under the rule should be struck in favor of admissibility. Id.; Dennis, 625 F.2d at 797 (8th Cir.1980). Finally, we note that in determining the probative value of evidence under Rule 403, "we must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case." United States v. Herman, 589 F.2d 1191, 1198 (3d Cir.1978), cert. denied, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).
 
 
 41
 We do not believe that any of the concerns motivating the exclusion of evidence under Rule 403 are present here, nor do we agree that the jury's verdict reflects the type of confusion which would require a new trial. There is no basis for the district court's conclusion that the jury was misled into believing that Keene's product was chrysotile or that the jurors were confused. Even if some danger of confusion existed, we do not believe exclusion would have been justified under Rule 403, because such confusion clearly did not "substantially outweigh" the probative value of Dr. Gee's testimony relating to the proximate cause of the victim's condition. Moreover, we note that the proposition which Dr. Gee's testimony tended to prove--that Keene's products were not the proximate cause of Mr. Thomas' illness--was directly at issue in this case.
 
 
 42
 We stress that at no time during this trial did Keene assert or imply that its product was chrysotile. It is true that Owens-Illinois asserted in its opening that its product was chrysotile and that the evidence would show the content of its products. However, contrary to the district court's statement in its opinion, Keene made no such assertion. The lack of proof on this issue could hardly have been made clearer to the jury. In its closing argument, plaintiffs' counsel painstakingly pointed out the lack of evidence as to the type of asbestos contained in Keene's products:
 
 
 43
 Dr. Gee has a lovely British accent, he's written many articles, I've stipulated he's an expert, but what he said has no bearing on this case.... he may very well believe what he testifies about, and he may very well believe that chrysotile does not cause mesothelioma. But my response is, so what? There is no evidence before you that the products manufactured by the Keene Corporation, Baldwin-Hill contained chrysotile. So who cares?
 
 
 44
 App. at 427 (emphasis added).
 
 
 45
 Plaintiffs' counsel then reviewed the testimony of Drs. Harrer and DuPont and addressed the issue of causation, again stressing its theory that all types of asbestos cause mesothelioma:
 
 
 46
 It is also very clear ladies and gentlemen, that Thomas was exposed to asbestos. Whatever the type, it doesn't matter. Not only is there no evidence before you by the defendants whether or not their product contained chrysotile or not, it doesn't matter. Because even Dr. Gee, with his lovely British accent, with his effort to involve you in all in his lecture, couldn't stand here, when I got him to boil down to yes or no, he could not tell you that chrysotile does not cause mesothelioma.
 
 
 47
 App. at 430 (emphasis added).
 
 
 48
 In her closing, counsel for Keene properly cautioned the jury that the plaintiffs bore the burden of proving that Keene's products were a substantial contributing factor in Thomas' disease. Keene's counsel disputed the plaintiffs' assertion that the issue of causation was a simple one, and pointed out that the experts who testified had disagreed on the crucial question of whether all types of asbestos caused mesothelioma. Counsel for Keene even explained why she was
 
 
 49
 going on about chrysotile versus crocidolite or amosite. And the reason is this. Despite what Miss Cooperman wants to tell you, it is very important because if you think about it, if there are chemicals--if there are materials, rather, asbestos materials that are more likely than others to cause mesothelioma, and those materials might not be present in this situation, then that's a factor that you have to take into consideration.
 
 
 50
 App. at 453 (emphasis added). Rather than asserting or implying that its product was chrysotile, Keene properly pointed out that if the jury did not believe that all types of asbestos caused mesothelioma and if there was no proof regarding the particular type of asbestos product to which Thomas had been exposed, the jury should find that the plaintiffs had failed to prove their case by a preponderance of the evidence.
 
 
 51
 Nevertheless, the district court apparently concluded that the jury could only have reached its verdict if it believed that Keene's product was chrysotile. Because nothing was done to give the jury the impression Keene's product was chrysotile, and because the jury's verdict would be fully justified by a belief, as urged by Keene, that plaintiffs had failed to prove proximate cause by a preponderance of the evidence, we conclude that the district court abused its discretion by granting a new trial on the basis of jury confusion. See Brun-Jacobo v. Pan American World Airways, Inc., 847 F.2d 242, 247 (5th Cir.1988) (appellate court may reverse discretionary order granting new trial where record does not support district court's finding that jury's verdict was result of prejudice or confusion).
 
 V.
 
 52
 Finally, the district court concluded that in any event, the grant of a new trial was warranted because of its failure to instruct the jury that there was no evidence that Keene's product contained chrysotile asbestos. The court acknowledged that neither party had objected to the instructions given by the court as required by Fed.R.Civ.Pro. 51,[5] but apparently determined that in spite of this omission, a new trial was warranted because the error resulted in a miscarriage of justice.
 
 
 53
 The district court correctly noted that even in the absence of a timely objection, it could grant a new trial if its error in instructing the jury resulted in a miscarriage of justice. 6A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice p 59.08 (2d ed. 1991). As with the its rulings on relevance and confusion, however, we think the district court similarly abused its discretion by granting a new trial on the basis of not having instructed the jury regarding the lack of evidence of Keene's products. Since Keene never suggested its product was chrysotile and it was made quite clear in the closing arguments that there was no such evidence, we cannot agree that the failure to instruct the jury on this fact constitutes a miscarriage of justice requiring a new trial.VI.
 
 
 54
 In sum, we hold that the trial court's initial decision to admit the testimony of Dr. Gee as relevant to the issue of proximate cause was correct and that a new trial should not have been granted on the grounds that the admission of this testimony was erroneous. Moreover, we conclude that granting a new trial on the grounds that the admission of such evidence, even if relevant, was so confusing as to require a new trial, was an abuse of the district court's discretion. Keene at no time asserted that its product was chrysotile and in fact, the plaintiffs emphasized to the jury that there was no such evidence. Moreover, Keene was under no obligation to prove the content of its products and its failure to do so cannot serve as the basis for the district court's conclusion that a new trial is required. The jury's verdict should not have been disturbed.
 
 
 55
 We will reverse the district court's order granting a new trial and remand the case back to the district court with instructions to enter judgment for the defendant consistent with the jury verdict at the first trial.
 
 
 56
 SEITZ, Circuit Judge, dissenting.
 
 
 57
 I would affirm the order of the district court granting a new trial although my basis for doing so may diverge somewhat from that employed by the district court. I believe the district court recognized that it committed error when, over objection and a motion to strike, it permitted defendant's expert to testify, without underlying support, that based on "the literature" he believed that chrysotile asbestos was used on board United States Navy ships. Plaintiffs objected to allowing the expert to give this testimony without verifying the chemical content of the asbestos studied in that literature. App. at 390-91. The court's overruling of that objection was error not because the answer, in and of itself, was objectionable within the meaning of Federal Rule of Evidence 703;[1] rather, it was error because the court did not require the defendant's expert to identify the underlying facts on which he relied. See Fed.R.Evid. 705.[2]
 
 
 58
 The action of the district court at the jury trial in allowing the unsupported statement of belief that chrysotile was used in United States Navy ships permitted the jury to infer that the exposure of the deceased was in a ship that used chrysotile. When this inference is coupled with the expert's admissible testimony that chrysotile does not cause mesothelioma, it reasonably permitted the district court to infer that the jury used such reasoning to conclude that the illness of the deceased was not attributable to defendant's product. I believe this prejudicial possibility should have been properly negated.
 
 
 59
 It seems to me that this substantial risk of prejudice was sufficient to support the conclusion that the district court did not abuse its considerable discretion here when it ordered a new trial in the interest of preventing a miscarriage of justice.
 
 
 
 [1]
 Following Thomas' death, Edward T. Blancha, the executor of Thomas' estate, was substituted as a plaintiff in the district court action
 
 
 [2]
 Plaintiffs actually contended that Thomas' illness and death were caused by exposure to asbestos products manufactured by Baldwin-Hill, a predecessor business entity for whose acts Keene stipulated it would be responsible. For the sake of simplicity, we refer throughout to Keene's products rather than Baldwin-Hill's products
 
 
 [3]
 There is no basis in the record for the district court's statement that counsel for Keene suggested anything of the sort in her opening
 
 
 [4]
 Indeed, we think the testimony of Dr. Gee as to the causes of mesothelioma would be relevant even if plaintiffs' experts had not testified as they did, because the question of proximate cause is always present in this type of action and testimony such as that given by Dr. Gee is clearly relevant to resolving that issue
 
 
 [5]
 Rule 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." Fed.R.Civ.Pro. 51
 
 
 [1]
 Rule 703 provides that,
 "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." (Emphasis added.)
 
 
 [2]
 Rule 705 provides that,
 "The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." (Emphasis added.)